**\* NOT FOR PUBLICATION \***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JOHN PILLITTERI, and GAIL PILLITTERI | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. Action No.: 14-03076 (FLW) |
| FIRST HORIZON HOME LOANS, FIRST TENNESSEE BANK, National Association, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Incorporated, THE BANK OF NEW YORK MELLON, | : : : : : : : | **OPINION** |
| Defendants. | : : | |

**WOLFSON, United States District Judge:**

John and Gail Pillitteri (collectively, "the Pillitteris," or "Plaintiffs"), appearing *pro se*, filed an Amended Complaint against First Horizon Home Loans ("First Horizon"), First Tennessee Bank National Association ("First Tennessee Bank"), Mortgage Electronic Registration Systems, Incorporated ("MERS"), and the Bank of New York Mellon Corporation ("BNY Mellon") (collectively, "Defendants"), seeking to quiet title on real property located in New Jersey. Presently before the Court is Defendants' motion to dismiss the Amended Complaint based upon Plaintiffs' lack of standing and, alternatively, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion to dismiss Plaintiffs' Amended Complaint is **GRANTED**.

**BACKGROUND AND PROCEDURAL HISTORY**

1

The Court will only recount the facts from the Amended Complaint and the exhibits attached thereto, and take them as true.

On August 17, 2006, the Pillitteris purchased a residential property located at 318 Meadowbrook Road, Robbinsville, New Jersey 08691 (the "Property"). Pls.' Compl. ¶¶ 1, 7. In order to purchase the Property, the Pillitteris obtained a mortgage loan from First Horizon[1] in the amount of $210,000 (the "First Loan"). Id. at ¶ 7. The First Loan was evidenced by a promissory note, and it was secured by the Property. Id. Subsequently, the Pillitteris obtained a home equity line of credit ("HELOC") from First Horizon in the amount of $30,000, but it was eventually increased to $63,000 (the "Second Loan"). Id. The Second Loan was also evidenced by a promissory note and secured by the Property. Id. Prior to 2008, the Pillitteris' main source of income was remodeling and selling homes. Id. at ¶ 74.

The Pillitteris generally allege that "First Horizon was actively engaged in the process of underwriting Mortgages with the intention of re-selling these mortgages to eventually be bundled, converted, pooled, and transferred to investors of Asset-Back Securities . . . under extremely sub-standard guidelines." Id. at ¶ 8. According to the Pillitteris, First Horizon was "fully aware" of the "reckless underwriting policy," which significantly contributed to "the subsequent decline in value [of the Pillitteris' Property] and the Sub-Prime Mortgage Meltdown of 2008." Id. at ¶ 10. In that connection, the

---

[1] On May 31, 2007, First Horizon merged into Defendant First Tennessee Bank. Defs. Br. at 3.

Pillitteris broadly contend that First Horizon was underwriting other people's mortgages without documentation;[2] however, the Pillitteris' mortgages were documented. Id. at ¶ 11.

The Pillitteris specifically allege that First Horizon assigned the First Loan, including both the promissory note and the mortgage, to First Horizon Asset Securities, Incorporated ("FHAS") in 2006. Id. at ¶ 33. Shortly thereafter, FHAS sold and deposited the First Loan into the First Horizon Mortgage Pass-Through Certificates Series FHAMS 2006-FA6 (the "FHAMS Trust"). Id. at ¶¶ 32–33. BNY Mellon is currently the trustee of the FHAMS Trust, which is established and governed by the Pooling and Servicing Agreement (the "PSA"). Id. at ¶¶ 35, 5. Furthermore, the Pillitteris allege that First Horizon sold and deposited the Second Loan into First Horizon ABS Trust 2006-HE2 (the "ABS Trust") in 2006. Id. at ¶ 19, 32. In 2013, however, the Second Loan was allegedly assigned from the ABS Trust to First Tennessee Bank. Id. at ¶ 19.

In their Amended Complaint, the Pillitteris claim that they received several letters from Defendants First Horizon and First Tennessee Bank requesting the Pillitteris to back-date some documents. See id. at ¶¶ 16-17. On October 27, 2008, the Pillitteris received a letter from First Tennessee Bank stating that the Pillitteris' Second Loan modification was misplaced at the County Clerk's Office. Id. at ¶ 17. Two days later, the Pillitteris received a letter from Fiserv Lending Solutions ("Fiserv"), on behalf of First Horizon and First Tennessee, which requested that the Pillitteris "resign a copy of your original documents." Id. On November 12, 2008, Fiserv sent the Pillitteris another letter requesting that they "re-sign the enclosed documents before a notary public and return them to [Laurie A.

---

[2] The Pillitterris also generally allege that "Defendants are using foreclosure as a means of confiscating property at below value due to clouded title." Id. ¶ 13.

3

Blackburn, Title Resolution Associate] using the UPS envelop provided for your convenience." Id., Ex. 16. The Pillitteris allegedly expressed concerns over the legality of back dating those documents. See id. at ¶¶ 16-17.

In February of 2009, the Pillitteris allege that First Horizon "denied all access to their online accounts." Id. at ¶ 17(a). The Pillitteris admit that they "were not able to make any payments" on the First and Second Loans, and thus, the Pillitteris "fell behind on [their] payments." Id. at ¶¶ 17(a), 74. On December 2, 2009, the Pillitteris allege that First Tennessee Bank filed a complaint for foreclosure on the Second Loan.[3] Id. at ¶ 18. Approximately one month later, First Tennessee Bank allegedly submitted a filing with the Mercer County Recorder, which stated that the Second Loan "was duly assigned" to First Tennessee Bank. Id. at ¶ 18. On March 12, 2010, the Pillitteris also allege that BNY Mellon, the trustee of the FHAMS Trust, filed a complaint for foreclosure on the First Loan. Id. at ¶ 14. On May 19, 2010, BNY Mellon allegedly submitted a filing with the Mercer County Recorder "to foreclose the [First Loan]." Id. at ¶ 16. On March 21, 2011, BNY Mellon filed a certification in support of order permitting entry of default on the First Loan.[4] Id. at ¶ 15.

Because of the aforementioned allegations, the Pillitteris maintain that "Defendants have engaged in deceptive practices . . . [and they] have been prevented from selling their

---

[3] In the Amended Complaint, it is unclear whether Plaintiffs' Property has been foreclosed, or whether Plaintiffs' Property is still in the process of being foreclosed. While BNY Melon has filed a certification in support of an order permitting entry of default on the First Loan, Plaintiffs do not allege any facts regarding the current status of the two Loans. In that connection, Plaintiffs stated that they have been prevented from selling their home, which leads the Court to conclude that Plaintiffs are still in possession of the Property.

[4] Plaintiffs allege that they only learned of the foreclosure action "via a Certification In Support of Order Permitting Entry of Default . . . which states that John Pillitteri was personally served on that date." Pls.' Am. Compl. ¶ 15.

4

home and recovering any of their money, and should be compensated for the mental anguish, pain and suffering, and monetary loss caused by Defendants." Id. at ¶ 74. The Pillitteris state that they invested close to $60,000 in materials and eight months of labor in the Property. Id. However, the Pillitteris claim that the value of the Property "dropped more than $100,000," and thus, the Pillitteris "lost their total investment." Id. In that connection, the Pillitteris assert damages in excess of $1,800,000, including treble and punitive damages. Id.

The Pillitteris filed their original Complaint in the Superior Court of New Jersey, Chancery Division. On May 14, 2014, Defendants removed the Pillitteris' complaint to this Court. Defendants then filed a motion to dismiss the Complaint on June 4, 2014. Before the motion was decided, the Pillitteris amended their Complaint on June 24, 2014, and Defendants' motion was dismissed as moot. In their Amended Complaint, the Pillitteris seek declaratory judgment to quiet title pursuant to N.J.S.A. 2A:62-1.[5] Thereafter, Defendants filed another motion to dismiss the Amended Complaint.

**STANDARD OF REVIEW**

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)

---

[5] In their Amended Complaint, Plaintiffs request, *inter alia*, that the Court "declare[s] that each and every one of these defendants should be disqualified from enforcing Plaintiff's [sic] note and mortgage," and Plaintiffs further request that the Court to determined "each and every one of the clouds upon Plaintiff's Property and order any such legal and equitable relief as is necessary for removing these clouds." Pls.' Am. Compl. ¶ 74.

5

(citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); see also Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). A plaintiff must show that there is "more than a sheer possibility that the defendant has act unlawfully." Id. (citing Twombly, 550 U.S. at 556). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips, 515 F.3d at 234–35).

The Third Circuit has cautioned, however, that Twombly and Iqbal "do not provide a panacea for defendants," rather, "they merely require that plaintiff raise a 'plausible claim for relief.'" Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (quoting Iqbal, 556 U.S. at 679). Thus, factual allegations must be more than

6

speculative, but the pleading standard "is not akin to a 'probability requirement.'" Id. (quoting Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556).

## ANALYSIS

In their Amended Complaint, Plaintiffs formally assert two claims. In their first claim, Plaintiffs "challenge[] the interest held by Bank of New York. Plaintiff[s] maintain[] that the interest of these parties lacks authenticity in essence" and that the "investors . . . each holding a proportional and typically miniscule interest in Plaintiffs['] note and security interest . . . are the *real parties in interest*." Pls. Am. Compl. ¶¶ 57, 59. Plaintiffs' second cause of action is a quiet title claim pursuant to N.J.S.A. 2A:62-1. In that cause of action, Plaintiffs generally challenge the validity of the assignments of the First and Second Loans, and argue that the assignments were ineffective. Specifically, Plaintiffs challenge: (1) the ownership of the First and Second Loans by Defendants BNY Mellon and First Tennessee, respectively, (2) the right of Defendants BNY Mellon and First Tennessee Bank to initiate foreclosure proceedings, (3) that Defendants were not in compliance with the PSA, (4) that Defendant MERS cannot properly execute an assignment on behalf of other Defendants, and (5) Defendants did not comply with some assignment recording statutes. See Pls. Am. Compl. ¶¶ 7-19, 32-74.

In their motion to dismiss, Defendants argue that Plaintiffs lack standing to challenge the validity of the assignments because Plaintiffs are not parties to those documents. In the alternative, Defendants maintain that Plaintiffs fail to state a claim of

quiet title. For the reasons stated below, Plaintiffs' claim to quiet title is dismissed because they lack standing to challenge the validity of the assignments.[6]

**i. Standing**

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) (alternation in original). To satisfy the "case or controversy" standing requirement under Article III, the plaintiff must satisfy the tripartite constitutional standing requirements. See Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). First, a plaintiff must have suffered an injury-in-fact. Id. An "injury-in-fact . . . is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011). Second, an injury-in-fact "must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Toll Bros., Inc., 555 F.3d at 137-38 (quoting Lujan, 504 U.S. at 560). And third, "the plaintiff must establish that a favorable decision likely would redress the injury." Id. at 138.

In addition to establishing the constitutional standing requirements, "[t]he concept of standing implicates prudential considerations that overlap, but extend beyond our

---

[6] Plaintiffs also appear to assert that Defendants are in violation of several state and federal laws. See Pls. Am. Compl. ¶ 74. In their amended complaint, Plaintiffs state that "Defendants are in violation of Fair Debt Collection [sic] Act, the Laws of New Jersey, The Helping Families Save Their Home [sic] Act, Title 46 Property, 46:10B-2 46:10b-50, N.J.S.A. 2A:62-1, 25:1-11, Writing requirement, conveyances of interest in real estate and other acts and laws determined by the Court, 25:2-2. Conveyances to deceive purchasers void as to purchasers for money or other good consideration." Id. (emphasis in the original).

inquiry under Article III." Soc'y Hill Tower Owners' Ass'n v. Rendell, 210 F.3d 168, 177 (3d Cir. 2000). The Third Circuit has summarized those prudential principles as follows:

> (1) the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties; (2) even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the respective branches; and (3) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in questions.

Id. at 177-78 (citing Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc, 140 F.3d 478, 485 (3d Cir. 1998)).

At the outset, the Court notes that the Third Circuit has not yet addressed whether a plaintiff has standing to challenge the assignment of their mortgage. In New Jersey, a few district courts have addressed the issue, but those courts have reached mixed results. Some courts have held that a mortgagor does not have standing to challenge the assignment of his or her mortgage, because he or she is not a party to the assignment contract. See English v. Fed. Nat. Mortgage Ass'n., No. 13-2028, 2013 WL 6188572, at *4 (D.N.J. Nov. 26, 2013) ("Plaintiff has failed to allege that she is a party or intended third party beneficiary to the contract and that she therefore she therefore has standing to challenge the contract"); Oliver v. Bank of Am., N.A., No. 13-4888, 2014 WL 1429605, at *2-3 (D.N.J. Apr. 14, 2014). Another district court held that a mortgagor does have standing to challenge the assignment of his or her loan. See Boykin v. MERS/ MERSCORP, No. 11-04856, 2012 WL 1964495, at *2-3 (D.N.J. May 31, 2012) (holding that plaintiff had "alleged sufficient facts to survive the Lujan test," and thus, the plaintiff "ha[d] standing to sue").

Circuits outside of the Third that have addressed this issue have also reached mixed results on the issue. See Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 86 (2nd

9

Cir. 2014) (holding that the plaintiffs failed to establish constitutional and prudential standing to pursue the "defects in the assignment of their mortgages"); Farkas v. GMAC Mortg., L.L.C., 737 F.3d 338, 342 (5th Cir. 2013) ("As a non-party mortgagor, and without any evidence showing [the plaintiff] to be an intended third-party beneficiary, we conclude that [the plaintiff] lacks the requisite standing to bring suit to enforce the terms of the PSA that govern the assignment of the mortgagor's note"); but see Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013) (holding "that a mortgagor has standing to challenge the assignment of a mortgage" despite the fact that the plaintiff was not a party to, or a third-party beneficiary of, the assignments).

Since the First Circuit has held that a mortgagor has both constitutional and prudential standing to challenge the assignment of a mortgage, this Court examines that court's reasoning.[7] In Culhane, the plaintiff refinanced the mortgage on her home; however, the plaintiff fell behind on her mortgage payments, and the defendant initiated foreclosure proceedings. Culhane, 708 at 286–88. In regard to the constitutional standing requirements, the court reasoned that "[t]he foreclosure of the plaintiff's home is unquestionably a concrete and particularized injury to" the plaintiff. Id. at 289. The court then determined that there was a direct causal connection between the defendant's right to foreclose by virtue of the assignment and the plaintiff's foreclosure proceeding. Id. at 289–90. Finally, the court found that "a determination that [the defendant] lacked the authority to foreclose would set the stage for redressing the plaintiff's claimed injury. Her complaint, at least in

---

[7] The Court notes that the First Circuit's holdings are persuasive but not binding. E.g., Fair Hous. Rights Ctr. in Se. Pennsylvania v. Post Goldtex GP, LLC, No. CIV.A. 14-4441, 2015 WL 171840, at *7 (E.D. Pa. Jan. 14, 2015).

10

part, prays for monetary damages as a means of ameliorating the asserted wrong." Id. at 290.

In regard to prudential concerns, the First Circuit acknowledged that "several courts have ruled that mortgagors lack standing to challenged mortgage assignments because they are neither parties to nor third-party beneficiaries of the assignments." Id. at 290. However, the court reasoned that "a Massachusetts real property mortgagor finds herself in an unusual position because" a "Massachusetts mortgagor has a legally cognizable right under state law to ensure that any attempted foreclosure on her home is conducted lawfully," but "Massachusetts law permits foreclosure without prior judicial authorization." Id. Because Massachusetts is a non-judicial foreclosure state, the court opined that "unlike an ordinary debtor… a Massachusetts mortgagor would be deprived of a means to assert her legal protection without having standing to sue." Id.

However, the First Circuit's finding that the mortgagor in Culhane had prudential standing to contest the validity of the assignment of her mortgage is distinguishable from the facts here. See Culhane, 708 F.3d at 291. Unlike Massachusetts, New Jersey is a judicial foreclosure state. U.S. Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 469 (N.J. 2012) (discussing that New Jersey's Fair Foreclosure Act requires a judicial foreclosure). Indeed, here, Defendants BNY Mellon and First Tennessee Bank filed foreclosure proceedings in New Jersey state court. See Pls. Am. Compl. ¶¶ 14, 18. Thus, under the First Circuit's reasoning, Plaintiffs are "ordinary debtors who could challenge the assignment as a defense upon being haled into court by the assignee seeking to collect on her debt." Culhane, 708 F.3d at 290.

11

Moreover, Plaintiffs fail to establish that they are "a party or intended third party beneficiary to the [assignment] contract."[8] English, 2013 WL 6188572, at *3 ("In the context of a mortgage assignment, case law has held that a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid"). Here, because New Jersey is a judicial foreclosure state and Plaintiffs could challenge the validity of the attempted foreclosure in the judicial foreclosure proceeding, the prudential considerations in Culhane do not apply; thus, there is no prudential reason for Plaintiffs to have standing to collaterally attack their foreclosure in a separate judicial proceeding. This Court is persuaded by the reasoning of our sister courts in English and in Oliver and holds that Plaintiffs do not have standing to challenge the validity of their mortgage assignments in this judicial proceeding. See English, 2013 WL 6188572, at *3. Accordingly, Plaintiffs' quiet title claim must be dismissed on this basis.[9]

**ii. Failure to State a Claim**

---

[8] In their Amended Complaint, Plaintiffs assert, without legal support, that privity exists between the rightful note holders (whom they identify as investors in the mortgage-backed securities containing their mortgage) and themselves. Pls. Am. Compl. at ¶ 40.

[9] In their Amended Complaint, Plaintiffs also allege that First Horizon was "fully aware" of the "reckless underwriting policy," which significantly contributed to "the subsequent decline in value [of Plaintiffs' Property] and the Sub-Prime Mortgage Meltdown of 2008." Pls.' Am. Compl. ¶ 10. Under the constitutional standing requirements, the decline in value of Plaintiffs' Property, and the subsequent foreclosure proceedings, are not fairly traceable to First Horizon's allegedly "reckless underwriting policy." See Toll Bros., Inc., 555 F.3d at 137–38; see also Lujan, 504 U.S. at 560. Here, Plaintiffs' "chain of causation [is] simply too attenuated" against Defendant are because there are myriad other independent actions of some third party, such as another bank, that may have contributed to the decline in value of the Property. See Anderson v. Ayling, 396 F.3d 265, 271 (3d Cir. 2005). Accordingly, Plaintiffs also do not have standing to challenge the "reckless underwriting policy" of Defendant First Horizon.

For the sake of completeness, the Court will, in the alternative, examine Plaintiffs' claims under the Rule 12(b)(6) standard.[10] In their motion to dismiss, Defendants also argue that Plaintiffs fail to state a claim because they fail to allege the elements of their claims and because Plaintiffs fail to establish that the mortgage assignments in question were invalid. Even if Plaintiffs have standing, this Court finds that Plaintiffs' Amended Complaint fails to state a claim and accordingly in the alternative dismisses Plaintiffs' claims on this basis.

  *a. First Claim: Validity of BNY-Mellon's Interest*

In what Plaintiffs call their "first claim," Plaintiffs "challenge[] the interest held by Bank of New York. Plaintiff[s] maintain[] that the interest of these parties lacks authenticity in essence" and that the "investors . . . each holding a proportional and typically miniscule interest in Plaintiffs['] note and security interest . . . are the *real parties in interest*." Am. Compl. ¶¶ 57, 59.

The Court notes that the complaints by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–21 (1972). In the context of a motion to dismiss, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Iqbal, 566 U.S. at 677–78 (quoting FED. R. CIV. P. 8(a)(2)). "However, even a *pro se* plaintiff . . . must still plead the essential elements of his claim and is not ordinarily excused from conforming to

---

[10] The Court notes that neither party has provided facts about the status of the foreclosure action filed in state court. If such proceedings are ongoing or have proceeded to judgment, it is possible that one of the federal abstention doctrines apply. See, e.g., Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). However, the Court lacks the necessary facts and arguments to make such a determination.

13

standard procedural rules." Wright v. Borough of Buena, No. 05-4782, 2006 WL 1644869, at *2 (D.N.J. June 12, 2006).

However, even under the less stringent formal pleading standards accorded to pro se litigants, the Court is unable to discern what type of cause of action Plaintiffs are attempting to plead in their "first claim." Plaintiffs appear to challenge BNY-Mellon's standing to foreclose on their property. Such an argument is typically pled in New Jersey as a defense in a foreclosure action. See, e.g., Deutsche Bank Trust Co. Americas v. Angeles, 428 N.J. Super. 315, 316 (App. Div. 2012); Deutsche Bank Nat. Trust Co. v. Mitchell, 422 N.J. Super. 214, 222 (App. Div. 2011). However, the instant proceeding is separate from a judicial foreclosure action, and thus such a defense has no place here.

Alternatively, plaintiffs have attempted to challenge the validity of a mortgage assignment in this district through a quiet title action. See, e.g., English, 2013 WL 6188572; Oliver, 2014 WL 1429605. However, Plaintiffs' second claim is a quiet title action; therefore, construing the "first claim" to be such an action would be redundant.

Because Plaintiffs do not identify or plead the elements of a recognized cause of action in their "first claim," the Court must dismiss Plaintiffs' "first claim" on this basis. See, e.g., Rogers v. Morrice, No. CIV. 12-7910 JBS/KMW, 2013 WL 5674349, at *5 (D.N.J. Oct. 16, 2013), appeal dismissed (Feb. 24, 2014) (A federal court only "has the authority and duty to decide actual cases and controversies between a plaintiff and one or

more defendants who are alleged to be liable for harm suffered by the plaintiff under some recognized cause of action arising under state or federal law.").

>  b. *Second Claim: Quiet Title*

Plaintiffs' second claim, however, does identify a recognized cause of action: quiet title. New Jersey statute establishes the pleading requirements for a quiet title action. See Club Comanche, Inc. v. Gov't of the V.I., 278 F.3d 250, 259 (3d Cir. 2002). New Jersey's quiet title statute provides:

> Any person in the peaceable possession of lands in this state and claiming ownership thereof, may, when his title thereto, or any part thereof, is denied or disputed, or any other person claims or is claimed to own the same, or any party thereof or interest therein, or to hold a lien or encumbrance thereon, and when no action is pending to enforce or test the validity of such title, claim or encumbrance, maintain an action in the superior court to settle the title to such lands and to clear up all doubts and disputes concerning the same.

N.J.S.A. 2A:62-1. The function of an action to quiet title is to empower "a person, who is in peaceable possession of realty as an owner, a means to compel any other person, who asserts a hostile right or claim, or who is reputed to hold such a right or claim, to come forward and either disclaim or show his right or claim, and submit it to judicial determination." Schiano v. MBNA, No. 05-1771, 2013 WL 2452681, at * 26 (D.N.J. Feb. 11, 2013); see also Friedman v. Monaco and Brown Corp., 258 N.J. Super. 539, 543 (App. Div. 1992). "Moreover, 'it is a settled rule that in an action to quiet title the plaintiffs must rely upon the strength of their own title and not upon the weakness of that of the defendants.'" Oliver v. Bank of Am., N.A., No. 13-CV-4888 RMB, 2014 WL 1429605, at *2 (D.N.J. Apr. 14, 2014) (quoting Dudley v. Meyers, 422 F.2d 1389, 1394–95 (3d Cir. 1970)).

In the instant matter, Plaintiffs contend that there is a cloud on the title of the First and Second Loans because their assignments were not valid. However, Plaintiffs fail "to allege how any perceived irregularities in the assignment between third parties could cloud title in the mortgage itself." English, 2013 WL 6188572, at *3; see also Schiano, 2013 WL 2452681, at *26 ("One of the elements of a quiet title claim is that there must be some doubt or dispute as to the status of the land. Here Plaintiffs do not allege that any other party has attacked the validity of Plaintiffs' mortgage. Plaintiffs claim that they do not know the owner of their mortgage and that the assignments of their mortgage are invalid. However, these bald allegations fail to establish that a quiet title action is warranted here."). Here, as in Schiano, Plaintiffs do not flesh out their cursory recitation of the quiet title statute. Rather, Plaintiffs merely ask Defendants to prove they hold the mortgages in question as a result of the assignments. See Am. Compl. at ¶ 73.

Further, Plaintiffs do not adequately allege the strength of their own title; they acknowledge that they fell behind on their mortgage payments, which would ordinarily subject them to foreclosure by their mortgagee under the terms of their mortgage agreement, and that "Plaintiff is indebted to the rightful owner of this lien." See Dudley, 422 F.3d 1394–95; see also Jacobs v. Fannie Mae, No. A-5197-11T4, 2013 WL 3196933, at *2 (N.J. Super. Ct. App. Div. June 26, 2013) ("[Plaintiff] acknowledges that he obtained a loan secured by the mortgage and note in question and does not allege that he paid off the note and extinguished the mortgage lien.").

Based on those facts, Plaintiffs have "failed to plead that Defendants' competing interests in the mortgage[s] are wrongful." See English, 2013 WL 6188572, at *3. Accordingly, the Court finds that even if Plaintiffs have standing to challenge the validity

16

of their mortgage assignments, which they do not, Plaintiffs have failed to state a claim to quiet title pursuant to N.J.S.A. 2A:62-1.

### c. *Miscellaneous Claims*

Further, Plaintiffs also appear to assert in their Amended Complaint that Defendants are in violation of several state and federal laws. See Pls. Am. Compl. ¶ 74. In a single paragraph of their Amended Complaint, Plaintiffs state, without more, that "Defendants are in violation of Fair Debt Collection [sic] Act, the Laws of New Jersey, The Helping Families Save Their Home [sic] Act, Title 46 Property, 46:10B-2 46:10b-50**,** N.J.S.A. 2A:62-1, 25:1-11, Writing requirement, conveyances of interest in real estate and other acts and laws determined by the Court, 25:2-2. Conveyances to deceive purchasers void as to purchasers for money or other good consideration." Id. (emphasis in the original).

In the instant matter, Plaintiffs have failed to plead the essential elements of their aforementioned claims, and thus, those claims must be dismissed. See Pushkin v. Nussbaum, No. 12-00324, 2013 WL 1792501, at *4 (D.N.J. Apr. 25, 2013) ("[T]he Court 'cannot expect Defendants to defend against claims that are not clearly and specifically alleged.'"); see also Roy v. U-Haul, No. 14-2846, 2014 WL 6611338, at *2 (D.N.J. Nov. 21, 2014) ("[T]he Court will not be tasked with trying to ascertain what possible claims or theories of relief that could arise from the facts set forth in the amended complaint, nor will the Court impose upon Defendant the burden of gleaning a cause of action from the pleadings."); Fontanez v. Pennsylvania, 570 Fed. App'x 115, 116 (3d Cir. 2014).

**CONCLUSION**

For the reasons set forth above, the Court finds that Plaintiffs do not have standing to challenge the validity of the assignments of the First and Second Loan. In addition, the

Court also finds that Plaintiffs have failed to state a claim to quiet title and their additional federal and state law claims. Accordingly, Defendants' motion to dismiss Plaintiffs' amended complaint is **GRANTED**.[11]

Dated:	February 24, 2015

 /s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

---

[11] Because the Court finds that Plaintiffs lack standing to challenge the validity of the mortgage assignments and that Plaintiffs fail to state a claim, the Court need not address Defendants' narrower arguments that Plaintiffs fail to state a claim for damages and that MERS should be dismissed as a defendant. See Defs.' Br. at 18–21.